Good morning, Your Honors. May it please the Court, my name is Catherine Alfieri. I represent the appellant Lucio Sanchez-Beltran. I would initially like to start by thanking the Court and counsel for accommodating my schedule and rescheduling this oral argument from Monday till today. And I would also ask the Court that if we're going to get into matters that are raised on sentencing issues, that those portions of these proceedings be placed under seal, because those issues in the briefs are under seal and they're based on evidence in the record from the district court that are also under seal. I'm not sure who's here and who's not, but I'd ask the Court that if we get into those issues, we seal them. Give me an example of something in your brief that you want to put under seal. My brief was filed under seal, Your Honor. There's a motion that was accompanying it. I believe the government's brief. What about the government's? Well, the government's brief also, I don't know what it was, but it says under seal. Correct. The government's brief was also filed under seal, as was my reply brief, as were the excerpts of record that reference sentencing portions of the record below. And the reason for that. So what do you want? Let me understand this. You're saying if we address sentencing, you want the transcript under seal. Correct, Your Honor. But any opinion or disposition we enter discussing sentencing can't be under seal. It's a difficult proposition for me to discuss with the Court in open court, but there are matters in the record, and there are issues of my client's safety, and he's in protective custody in the BOP. There are issues that are raised in the briefs and in the excerpts of record that go to those issues. So I'd ask the Court to perhaps file it. Give me something, you know, in your brief or in the government's brief that is a matter that you think is properly sealed. Like just anything. Either brief. There are questions. Give me a page or something, yeah, so you don't have to tell me what it is. From page 42. Of whose brief? Of my brief. Your brief? Of my opening brief. That is the 35B issue through pages 46 of my brief. References issues that are under seal in the district court. And I can do the same thing for the excerpt of record if you'd like. Well, you spent the 42. And then what, 46? Did you say page 46? 42 through, yeah, 46, Your Honor. What are you talking about on page 46? You mean the argument, sub-argument E? No, no, that's prior to E, sir. Just above argument E. That's part of the prior argument on the 35B issue. All right. The issue I would like to address with this Court, first I'd like to reserve five minutes for rebuttal, if I may. The issue I would like to address this morning is the Rule 11 due process violation, which was occasioned by the district court's acceptance of a guilty plea on the 924C count without establishing a factual basis for each essential element of the offense as required by Rule 11F and relevant due process principles. The facts below are relative, are largely undisputed. During the plea proceeding, the government made an offer of proof indicating that the defendant was in proximity to a weapon that was discovered during a traffic stop in a vehicle, and that the defendant made several motions toward his feet during the pendency of that stop. That is all the factual evidence on the record supporting the defendant. Bending over, wasn't it?  The defendant made several motions toward his feet. There's varying reports of how many times, but it's numerous times. During the colloquy, the Court asked the defendant, in response to the question, how do you plead to the 924C use or carrying of a firearm in relation to enduring a crime, a drug trafficking crime, and he responded, I did not have the pistol with me. The Court then explained to Mr. Sanchez-Beltran that if the gun was within his reach, that was a sufficient basis upon which to predicate the offense. And we submit that that is not a sufficient factual basis upon which to predicate this offense. As this Court is aware, 924C has a myriad of elements and sub-elements. In this case, the government only proceeded on the carry of the weapon theory. And the carry problem has two sub-elements. There must be knowing possession, which can be actual or constructive, and there must be knowing conveyance. And then the second element is the during and for the purpose of facilitating the underlying offense. And that purposefulness is an intent-based query. The presence of a firearm cannot be accidental or incidental. And in our case, there's no direct evidence that the defendant was aware of the gun in the car or that he was its constructive possessor. The government continues to say that. But isn't there – here's my question for you on that. If there's evidence that he's observed with his hands down on the floor where the evidence that he won't exit the car on demand, and then they find the gun under the floor mat, wouldn't that be adequate? Or why wouldn't that be adequate circumstantial evidence that he had the gun in his possession and was trying to hide it under the floor mat? Well, the constructive possession inference is generated by sole and exclusive control and occupation of the premises or the vehicle. And in this case, we have a vehicle that is – It doesn't have to be sole. It could be joint. Well, the United States v. Reese and United States v. Young say that the joint occupation of – the inference cannot be drawn where there are several occupants in a vehicle or in a residence. And so you're asking the inference be drawn on the possession question from a joint occupation of a vehicle. We don't know. I think it's best. Yeah, but it's not solely joint occupation. There's also evidence of his hands being down at the floor mat and of him stalling or delaying before exiting. So when you put that together with the gun being under the mat in between where his feet were, why can't knowing possession be inferred from that? Because there is a – It's not just a case – not a case where they stopped the car and said, get out. Everybody got out, and later they do an inventory search and find a gun. They have this other evidence that seems like it might show that he knows about the gun. And I would argue that even at best, if it shows that he knows about the gun, it doesn't show his intent to possess the gun. It doesn't show knowing conveyance. It doesn't show that the location of the gun or the gun's presence in the vehicle was not accidental or incidental. We have a variety of other facts before the Court that demonstrate that Mr. Sanchez Beltran's fingerprints are not on the gun. We have evidence that someone – What we're talking about is whether the district judge appropriately advised him of it. I mean, he pled guilty to the offense, but it's a question of whether the judge appropriately advised him. What was wrong with the advice? Well, I think the advisement was when Mr. – I think there's two parts to that argument. The first argument is that there's an insufficient factual basis for each of the elements and that this Court, in order to sustain the plea, has to find every element of this offense virtually by the generation of inferences. The second argument is that in describing the elements to Mr. Sanchez Beltran, the Court convinced him that he was guilty of this offense if the gun was found within his reach. And that is – that is not a correct statement of the law. Mr. Sanchez Beltran indicated that he was not in possession of that weapon and that it wasn't his weapon. And we also know from evidence that is properly before the Court, from Mr. Sanchez Beltran's own testimony, which the government has indicated was candid and reliable, that neither the weapon nor the vehicle were his. We know that there were no fingerprints that match Mr. Sanchez Beltran on the weapon. We know that there are no witness statements that attribute the weapon to Mr. Sanchez Beltran. We have him furtively leaning over and we have him in a vehicle within reach of the weapon. And that is the sole evidence on the record to substantiate this – to substantiate and provide a factual basis for the plea. And I mention this, but that on each element of this case, in order for the Court to sustain this plea, each and every element has to be factually established by the generation of an inference. There is no case in the Ninth Circuit or any circuit that I was able to find or in the Supreme Court or any district court wherein a plea, the factual basis for a plea is sustained solely by the generation of inferences. We have to identify the possessor of the weapon by inference. We have to identify the conveyor of the weapon by inference in this case. And we have to identify what his intent was in possessing the weapon, that it wasn't just incidental or accidental, also by inference. And I would submit that a factual basis of a plea predicated solely on inferences is patently insufficient. There is absolutely no direct evidence. Again, there's circumstantial evidence. There is the attempt at the generation of inferences, but there is no direct evidence whatsoever on any single element. But do you have – do you have any case that says that all the elements can't be shown by a reasonable inference? That is, I would have thought that the question is whether an inference is reasonable as opposed to whether it's direct evidence versus circumstantial. And I thought the Supreme Court recently issued a ruling indicating that circumstantial evidence could have the same weight as direct evidence. Yes, Your Honor. I'm aware of that. What I'm arguing, though, is that I think that the amassed inferences is unreasonable, that I think each of these inferences to be raised is unreasonable. Taking each one apart, I think that the best evidence of the leaning over movement does go to possession. And I still think that's an unreasonable inference to draw, given the evidence that's before this Court, that's properly before this Court on that issue. But even if this Court were to find that the possession element was properly raised by inference and that was a reasonable inference, there's absolutely no evidence on the conveyance of it, on the conveyance element of the Supreme Court.  is that the car was in the car. That he was — it was in the car in which he was traveling, and he had it right between his legs, this big lump behind — on the mat that was between his legs. And it seems to me there's pretty clear inferences that it was being carried in the car that he was in, and he had control of what was under that mat. Well, as I said to the Court, there's no direct evidence on that issue. And what I'm focused on in terms of the conveyance issue is that who was the conveyor of that weapon. There's no evidence in the record who conveyed it. We certainly know after the fact, when he's getting — when there's a protectural traffic stop going on, that Mr. Sanchez Beltran has it at his feet. We don't know if one of the other two passengers placed it under the mat. We don't know if it was under the mat at the time that the car was borrowed by one of the occupants. We don't know how the — how the — how the gun got there. And particularly in a case where there's a plea, it would be pretty simple for the district court to have asked these questions and to have resolved the record. And we have a defendant saying, I didn't have the pistol with me. He's saying directly on the record. Now, you're wanting to reserve five minutes. Do you want to cover another area other than that one? I think I'll stop right there, and I'll — I will reserve the balance of my time for rebuttal. All right. Thank you, Judge. Good morning to the Court. My name is John Glang. I'm an assistant United States attorney for the Northern District of California, and I represent the government in this case. May it please the Court. The record in this case contains strong evidence that a factual basis existed for the district court to accept the defendant's guilty plea to the 924C offense. You see, the problem is, as I read the record, you know, the court kept saying, well, do you understand that the government has to prove, you know, A, B, and C? And he says, yeah, I understand that's what the government has to prove. But I don't think the court asked him, and do you admit that that's true, right? The defense, in fact, in this case concedes that the district court adequately and properly advised the defendant of all of the elements of the 924C offense during the change of plea. Oh, all right. I see the element that could happen. Advising of the elements is different than providing a sufficient factual basis. Correct. The factual basis either has to come from some evidence or an admission. Correct. So the factual basis. He never admitted, did he? I mean, the court never asked him to admit that, well, you know, the government says A, B, and C was the circumstances. Do you admit that was true? The court never asked him that. The court clarified the two different instances during the colloquy on the 924C offense. The court clarified the in-relation-to element, and it clarified. Well, when he clarified, he said, now, do you understand that this is what the government has to show? All right, that's an element of the offense. But there's no proof of that. There's no evidence of that. Except for what the court said. No, no, but the court did ask the defendant, having clarified this for you, is it true? Oh, he didn't ask him. No, the court asked him, do you understand that that's what the government has to prove? Right. And he said, yes, I understand that. But he didn't ask him, and do you admit that those are the facts? Show me where he asked him that question in the sentencing transcript. E.R. 122, Your Honor. Just a minute. E.R. Just a minute now. E.R. 122? Yes. Okay. Go ahead and read it to me. So you understand what I'm saying, Mr. Sanchez, that the government doesn't have to prove that you actually held the gun in your hand and somebody saw you do that. They do have to show that there was a gun found in the vehicle in a place where you could control it. And I believe that's what Mr. Glang indicated in his offer of proof. So is that the case? Answer from the defendant, that's true. I mean, so is that the case? I mean, you understand that's the case, that that's what the government has to prove. No, no. You understand that that is what the government has to prove. And is that the case? And he said, yes, that is. That's true that that is the case. So, I mean, clearly, and then the Court, and then I was the AUSA president in the colloquy. I then went on to clarify the definition of carry from the Ninth Circuit. From the instruction, right. And the Court says, does that make it clear? And he says, yes. And then the Court asks, what is your plea to that charge? And he says guilty. There it is. So in terms of the factual basis, which I think is the main argument that was at least raised orally, we have the defendant actively engaged in a quarter-million-dollar cocaine deal, which is in progress at the time of this incident. The defendant had ridden in the back seat of the car to Morgan Hill, presumably from the Salinas area, to meet with the informant. He then got out of the vehicle and pointed to a bag in the trunk of the car, which contained the $250,000 cash. He then got back into the back seat of the car. He was the only occupant of the back seat of the car. And the testimony from Officer Parra, who was a CHP officer, was particularly compelling on this issue. He used the word furtive. He testified during the suppression hearing that the defendant on approximately 12 different occasions, continuously and repeatedly and nervously, reached down toward his feet, toward the exact area where Officer Parra also observed the bulge, which, of course, was later determined to be the firearm. Officer Parra testified that he actually had an eerie feeling of being hunted at the time of this incident. And, in fact, there was a statement that I made during the sentencing hearing that Officer Parra had testified or had actually stated that in his 10-year career as a CHP officer, this was one of the two or three most terrifying experiences that he had had as an officer. So, you know, we can sit here after the fact and parse out what was going on, but the context of what was actually happening, while it was happening, was this was an immensely terrifying and life-threatening situation which was going on. And it could easily have resulted, frankly, in a shooting. But as it happened, they had to forcibly extract Mr. Sanchez Beltran from the backseat of the vehicle. He was alone there. He had exclusive dominion and control over that particular firearm. And in the case information, there's overwhelming evidence that the defendant, in fact, did possess that firearm and that he carried it and that it was during and in relation to a drug trafficking crime. And in this regard, there only need be sufficient evidence in the record, only sufficient evidence in the record to support the inference or conclusion, rather, that the defendant is guilty. In terms of the line of cases or the lack of a line of cases that counsel is referring to on the circumstantial evidence aspect, there are only two elements to a 924C. She says there's a myriad of elements, and there's only two. One is the carrying. The other is the in relation to element. And I think if you really assess this ---- Well, there's a knowledge element, too. I'm sorry? There's a knowledge element also. Yeah. But the in relation to ---- That's part of her case. Well, you know, there's no showing that he knew it was there. Yeah. The in relation to element contains within it the knowledge element, because it has to be carried or used in relation to the crime. And that can only happen if there's knowledge, obviously, that the crime is in progress and that the firearm is possessed with a nexus to the underlying drug trafficking crime. So the knowledge element is the second element. I'm sorry? Here's a question I have for you. What is the best case, you think, or cases for the principle that the basis can be shown by reasonable inference from circumstantial evidence? Well, I think that the law is clear that circumstantial evidence and direct evidence are both acceptable as means of proof. And I think it's also clear that if you project these 924C cases into jury trials, it's going to be very unusual for the government to have direct evidence for all of these elements. Unless the defendant comes in with an extrajudicial statement or admission that he possessed the firearm with that particular intent in mind, the government is going to have to establish these elements almost invariably through some sort of inference or some sort of circumstantial evidence that the government is going to ask the trier of fact to draw. And I think there's certainly no case that prohibits or I should say there's certainly no case that requires that the government have only direct evidence of any specific aspect or element of an offense. I just think that it's clear that the government will be involved in trials in 924C cases where it's going to have to show where a defendant is contesting the elements, that through the drawing of inferences and circumstantial evidence that the government presents in its case to the jury, for example, that the elements have been satisfied. And there's certainly no case that requires the government's statement. In this case, if the district judge had gone about it a little bit differently, I mean, there would be direct evidence. He could ask the defendant, do you admit that you knew the gun was there under the mat? Right. Yes or no? He didn't ask him that question, did he? But again, he didn't ask. What I'm saying is they're cut, so it's easy on a plea of guilt to get direct evidence, isn't it, if you go about it the right way? Right. He didn't ask that question. Your Honor, as I say, he did advise him of the elements. I know that, but he didn't say, he didn't say, do you admit that the gun was right there between your feet under the car mat? But that's not a requirement. No, but that would be direct evidence, wouldn't it? That would be, but again, there's no 924C case. No, but what you're saying is you can't get direct evidence. And I'm saying you can easily in a plea of guilty situation. Right. But again, based on what the Court did, the Court advised the defendant of the elements, the defense concedes that the elements were properly advised in the colloquy and the defendant indicated that he understood and he proceeded in a guilty plea. That's the record that this case is reviewing an appeal. And I think given that, the Court needs to affirm it. Now, there's two other main issues on the appeal. Obviously, one has to do with the competency to be sentenced as well as to enter the guilty plea. The other has to do with the sentencing. And I'm not going to argue that the Court has not made any oral arguments in those areas. I'm prepared to argue those to the Court if the Court wishes. Let me ask you one question about the sentencing issues. I mean, the main issue is, you know, whether or not the court, district court, went about it the wrong way in terms of, you know, of presuming that the guideline sentence was the correct sentence, right? So that, you know, implicates our in-bank, recent in-bank argument in this Cardi and Zavala cases. And I assume we'll all get some direction as to what we should do. In fact, the Supreme Court granted hearing on the same issue. You think we should defer deciding that issue? No. Your Honor, I'm glad you asked that question. Obviously, Zavala and Cardi have been withdrawn pending the en banc review. Right. I think that leaves Cantrell, which was written by Judge Gould, as the lead post-Booker case in this area. But I think that there's nothing to be gained in this case, given this record as to how the sentencing hearing was conducted. There would be nothing to be gained by waiting for further clarification and nothing to be gained by remanding this case for resentencing. There's no legitimate basis to conclude that the Court would impose a materially different sentence had it had a different view of Booker or some sort of clarified view of Booker. I mean, in this case, the district court stated at the outset of the sentencing hearing that it was unusually familiar with the facts in this case. And, in fact, it had presided over a three-session competency hearing, a suppression hearing, as well as a special hearing in which the defendant's sister testified. So there are actually five different hearings leading up to this guilty plea. And it was also the pleas were entered on the eve of trial, so there were a large number of pretrial documents that were submitted. The Court had an unusual handle on this case. And consistent with the Booker decision, the Court did consider aggravating and mitigating circumstances in this case. The aggravating circumstances which the Court considered were the coercion of the defendant's sister against her will into participating into this drug trafficking conspiracy, one of the three conspiracies. The extremely threatening situation which the defendant created, which I referred to earlier in the argument as being one of the two or three most terrifying incidents in the ten-year career of a CHP officer. The fact the defendant was a fugitive for over two years. The Court also balanced mitigating factors. Specifically, those included psychological issues of the defendant and mitigating factors in his background, as well as the historical information that was provided to the DEA. The Court asked earlier about material that should remain under seal. Well, obviously, there's 19 pages of DEA reports that were submitted by the defense during the sentencing hearing. That's a good example, I think, of something that needs to remain under seal and answer the Court's earlier question. But I think that given the fact that this Court, the district court rather, spent an unusual amount of time in the sentencing hearing weighing out the arguments from both sides, that it had an unusual grasp of the circumstances surrounding the – both the defendant and the various crimes that he committed, that there would be nothing to be gained by remanding this case. And I think that the sentence was reasonable within the meaning of Booker. The Court clearly considered the 3553A factors. There are four or five different portions in the sentencing transcript that I could cite to, if the Court wishes, where it was very clear that the district court was familiar with Booker and actually utilized language which was Booker-consistent   in announcing his sentence. So, again, we have to have plain error here because there was no objection to a so-called presumptive sentence that was raised during the hearing. And on this particular record, there's no legitimate reason to believe that the court would have imposed a materially different sentence. So we have that. And I'm prepared to argue the competency. I don't know that the Court wants to hear that. We have unanimous opinions from both doctors as well as the defendant's own attorney that the defendant was competent. The opposing counsel hasn't argued that. I'm sorry? I say opposing counsel hasn't argued that, and so maybe we'll rely on the briefs on that. All right. Thank you very much. Unless the Court has any further questions, I'm prepared to submit it. Thank you very much. Kagan. I just want to be clear, just to go back to the 924C issue before I move on to the presumptive sentencing issue, that we certainly in our brief indicated that the Court articulated the elements to Mr. Sanchez-Beltran, but that there was a misstatement and a confusion of elements, and that the Court never asked the pertinent questions. And I just wanted to be clear that that's what the briefing references, and that's our argument. But just to briefly address the question of the presumptive sentence, I think it's clear in this case from the record, if the Court simply reviews the sentencing transcript, that the Court started with the guideline sentence as a presumptively correct sentence, and no, it started with it, considering it, but I don't think   I don't think the Court said it was presumptive. It didn't say presumptive. That's my spin on it, certainly. Yeah, I know. And then place the onus on Mr. Sanchez-Beltran to provide some mitigating evidence to move down from that. And I think the error, if the Court reviews the record, is relatively clear. The question is whether it's plain error and whether this Court should reverse  Well, Cantrell says, I think, almost in so many words that the guideline is the starting point, doesn't it? It is the starting point. And that's what the district court here used it as a starting point. I think the district court did a little bit more than that. I think if the Court looks at the transcript at ER 130, the Court indicates that, quote, That's more than a starting point. That's placing the onus on the defendant to provide evidence in mitigation to reduce a sentence that's presumptively correct. And I think that if the Court goes on, there are other portions of the transcript at ER 158 where the Court indicates, wants to make sure that Mr. Sanchez-Beltran has had the opportunity to review the PSR with a Spanish-speaking interpreter and Mr. — his defense counsel indicates, yes, portions of it. And the Court says when you say portions of it, did you review the sentencing calculations in particular? And Mr. Brower says, yes, sentencing calculations and the various points that we went over today. And the Court says, all right. So the matters that were germane to the Court's imposition of sentence were reviewed with your client with the assistance of a Spanish interpreter. This transcript of the sentencing reads like a pre-Booker sentencing guidelines sentencing, in my view. And I would urge the Court to look at reversing and remanding, vacating the sentence and remanding, because I do think that a different result is possible if the Court were to properly consider evidence that it did not properly consider. One, that the defendant suffers from a psychotic disorder that was diagnosed by the Court's own expert, that that psychotic disorder was likely exacerbated by the abortion of illicit drugs. The fact that the co-defendant in this case received a sentence of probation was never — was never considered by the Court. There are a variety of factors, including this defendant's horrific childhood abuse, organic grain. Kennedy. Is that an appropriate factor, what the co? Kagan. I'm sorry, Your Honor? Kennedy. Is it an appropriate factor to consider what the co-defendant got? I believe so, Your Honor. I believe that in looking at a sentence that is as draconian as 32 years for Mr. Sanchez-Beltran against Mr. Cota, who is the co-defendant in this case receiving a sentence of probation, that certainly has to weigh in in a reasonableness analysis as to the reasonableness of Mr. Sanchez-Beltran's sentence. And I would submit that those factors were not properly reviewed by the Court and that there was not sufficient evidence to support the sentence that was imposed in this case. So unless the Court has any further questions, I will sit down. All right. Thank you, Counsel. Thank you, Your Honor.
judges: Hug, Tashima. Gould